## COMMISSIONER OF INTERNAL REVENUE v. TILLOTSON MFG. CO.
### No. 6564.

Circuit Court of Appeals, Sixth Circuit.
March 14, 1935.

Berryman Green, of Washington, D. C. (Sewall Key and Norman D. Keller, both of Washington, D. C., on the brief), for petitioner.

Lehr Fess, of Toledo, Ohio (Doyle & Lewis and Frank S. Lewis, all of Toledo, Ohio, on the brief), for respondent.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The Commissioner determined a deficiency of $16,187.20 in respondent's income tax for 1926. The Board of Tax Appeals decided that the Commissioner erred in his determination. 27 B. T. A. 913. The controversy arises out of the distribution of common stock of the Willys-Overland Company to respondent, a preferred stockholder of that corporation.

On December 2, 1925, the directors of the Willys-Overland Company declared a dividend of $29.75 on each share of outstanding preferred stock, being dividends in arrears from October 1, 1921, to October 1, 1925, inclusive, payable on January 2, 1926, in common stock of the company, to be taken at $25 per share, and a cash dividend, not material here. For this purpose they appropriated 262,389 shares of the unissued capital stock of the company. On January 2, 1926, respondent received 7,735 shares of no-par common stock, the market value of which upon that date was $31.375 a share, aggregating $242,685.63. The market value of the preferred stock on this date was $93, or $604,500 for respondent's 6,500 shares. On February 8, 1926, respondent sold its entire holdings of preferred stock for $599,906.67.

In respondent's income tax return for 1926, it treated the receipt of the common stock as a property dividend and included its value ($242,685.63) with other dividends in its gross income and in its deductions, under section 234 (a) (6) of the Revenue Act of 1926, 26 USCA § 986 (a) (6). It reported a profit of $181,331.67 from the sale of the preferred shares, based upon their original cost of $418,575. The Commissioner treated the transaction as a stock dividend, tax free under section 201 (f) of the Revenue Act of 1926, 26 USCA § 932 (f), applied it to reduce the cost of the preferred stock, apportioning the original cost of $418,575 between the old preferred and the new common in the ratio that the total market value on January 2, 1926, of each bore to the combined total market value of both. Article 1599, Regulations 69, promulgated under the Revenue Act of 1926. This resulted in an assigned cost of $298,669.81 to the preferred shares from which the Commissioner computed a profit of $301,236.86 upon the sale of the preferred stock. He thus determined the deficiency.

The sole question involved is whether a dividend declared upon cumulative non-voting preferred shares payable in common voting shares is a stock dividend tax free within the purview of section 201 (f). If the dividend was not subject to tax, the Commissioner's determination was correct. If the dividend was subject to tax, the respondent correctly measured its profit from the sale of the preferred stock.

The Commissioner urges that under the decisions of the Supreme Court of the United States, and particularly Eisner, Col-

lector, v. Macomber, 252 U. S. 189,.40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, this particular distribution of common stock is not subject to tax, and that the Board of Tax Appeals erred in its order and decision. In that case, common stock was distributed pro rata to common stockholders. The decision that the dividend was not subject to tax was based partly upon the proposition that there was no severance of the corporate assets, and hence no income received by the distributee. However, it was also pointed out in that case, as a material fact, that the dividend did not alter the preexisting proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before.

Two tests were thus established for distinguishing a taxable from a non-taxable dividend in stock: (1) Severance of assets from the corporation, and (2) alteration of the preexisting proportionate interest of the stockholders.

In the instant case the first test was met. There was no severance of corporate assets. The distribution was made to its preferred shareholders by the corporation,. not in stock of another corporation, not from its own treasury stock, but from its own unissued stock.

The second test was not met. The preexisting proportionate interest of the stockholders was substantially altered.

The significance of the alteration of the proportionate interest was pointed out in the case of Gibbons v. Mahon, 136 U. S. 549, 559, 560, 10 S. Ct. 1057, 1059, 34 L. Ed. 525, in which the decision turned upon the fact that the interests of the distributees had not been increased. There stock had been distributed share for share among the stockholders of the company. The court said:

"The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones."

The same distinction was made in Towne v. Eisner, Collector, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254, in which the above quotation was reiterated.

In Peabody v. Eisner, Collector, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152, which held that a dividend by one corporation of shares owned by it in another corporation was taxable as a distribution of a like value of money, the court points out that the interest of the stockholder in the accumulated earnings and surplus of the company was not the same after the declaration of the dividend as before.

United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66, 66 L. Ed. 180, presented the case of a reorganization resulting in the formation of a company not substantially identical with the first. The court, holding that a dividend in stock of the old company paid in stock of the new company was taxable as individual income, stressed the fact that the individual stockholders of the old company "received assets of exchangeable and actual value severed from their capital interest in the old company, proceeding from it as the result of a division of former corporate profits, and drawn by them severally for their individual and separate use and benefit."

The court also stated that the liability of a stockholder to pay an individual income tax must be decided by the effect of the transaction upon the individual.

Weiss, Collector, v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 492, 68 L. Ed. 1001, 33 A. L. R. 520, held that a dividend in stock was non-taxable upon the ground that it constituted an issuance and exchange of certificates representing the same preexisting interest. The court again declared that to constitute gain "separated from the original capital interest," the stockholder must receive "a thing really different from what he theretofore had."

In Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 577, 69 L. Ed. 1079, the distribution of stock was held to constitute taxable income. The court grounded its decision upon the fact that after the distribution the stockholders no longer owned "the same proportional interest of the same kind in essentially the same corporation."

It is true that there is a distinction between the instant case and those cited. Here the dividend issued to the preferred stockholders in payment of the accrued preferred dividends was unissued stock of the corporation itself, not stock in any other corporation. However, the right to share in assets upon dissolution, and in the earnings of the corporation upon the declaration of dividends, was materially altered. Each preferred stockholder, in consideration of relinquishing his rights to the accrued preferred dividends, secured new voting rights, and additional property rights which might

well afford him a different and greater market with an increased money return. In fact the precise situation was presented, described under different circumstances, in United States v. Phellis, supra, that the preferred stockholders received assets of an exchangeable and actual value proceeding from their capital interest in the old company, drawn by them for their individual and separate use and benefit.

We think that the mere circumstance that this transformation was effected within one single organization does not alter the applicability of these rules. The Commissioner erred in applying to the transaction one test only of those laid down in Eisner, Collector, v. Macomber, supra, and the other decisions above cited. Applying the other test, namely, that of alteration of proportionate interest, the preferred stockholders received taxable income, and respondent did not err in the computation of its taxable gain.

The decision of the Board of Tax Appeals is affirmed.