**Isadore PIZITZ and Hortense Pizitz, Plaintiffs,**

**v.**

**George D. PATTERSON, District Director of Internal Revenue for District of Alabama, Defendant.**

**Civ. A. No. 9087.**

United States District Court
N. D. Alabama, S. D.

May 31, 1960.

William S. Pritchard and Winston B. McCall, Birmingham, Ala., for plaintiff.

William L. Longshore, U. S. Atty., and M. L. Tanner, Asst. U. S. Atty., Birmingham, Ala., and James P. Garland, Lyle M. Turner, Jerry M. Hamovit, Robert L. Littenberg and James P. Saunders, Jr., Attys., Dept. of Justice, Washington, D. C., for defendant.

LYNNE, Chief Judge.

This cause, coming on to be heard, was, by stipulation of the parties, submitted for final judgment of the court without the intervention of a jury upon the pleadings, pretrial order, defendant's request for admissions and accompanying schedule and plaintiffs' answers to such request for admissions.

In the year 1953, the Pizitz Realty Company had two classes of stock, common and 6 percent cumulative, non-voting preferred. There were six common stockholders, five of whom owned preferred shares as well and six other stockholders owning only preferred shares. Plaintiff, Isadore Pizitz, owned 405 shares of common stock having a par value of $10 per share but no preferred shares, while his wife, plaintiff, Hortense Pizitz, owned 90 shares of common

stock and 35 shares of preferred stock having a par value of $100 per share. Prior to the dividend in question there were 1,500 shares of common stock outstanding and 1,000 shares of preferred.

On December 15, 1953, the Pizitz Realty Company, pursuant to a resolution adopted December 10, 1953, paid a stock dividend of 500 shares of this preferred class of stock to its common shareholders. Each common stockholder received one share of preferred for each three shares of common he then held. No such dividend was paid to the preferred stockholders. Plaintiff Isadore Pizitz received 135 shares of preferred stock, while plaintiff Hortense Pizitz received 30 shares. These 165 shares of preferred stock, with a value of $16,500, were included within the income of plaintiffs, who filed a joint return, by the Director.

Based upon the Director's inclusion of such stock dividend and his denial of an additional dependency credit of $1,200 for the year 1953, additional taxes were assessed against plaintiffs for the calendar year 1953 and on February 14, 1957, plaintiffs paid to defendant the sum of $13,859.02, representing such additional taxes and interest. Their claim for refund having been denied, this suit followed.

Section 115(f) (1) of the Internal Revenue Code of 1939, which had its genesis in the Revenue Act of 1936, § 115 (f) (1), 26 U.S.C.A. Int.Rev.Acts, page 870 and which is controlling here, provides:

"§ 115. Distributions by corporations.

\* \* \* \* \* \*

"(f) *Stock Dividends*—

"(1) *General rule.* A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution. \* \* \*" 26 U.S.C. 1952 ed., Sec. 115.

Beginning with Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, and continuing through Koshland v. Helvering, 1936, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1286; Helvering v. Gowran, 1937, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Helvering v. Griffiths, 1943, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843; Helvering v. Sprouse, 1943, 318 U.S. 604, 63 S.Ct. 791, 87 L.Ed. 1029, and Strassburger v. Commissioner of Internal Revenue, 1943, 318 U.S. 604, 63 S.Ct. 791, 87 L.Ed. 1029, the Supreme Court has construed the language of Section 115(f) (1) to exclude from income all stock dividends that did not constitute income within the meaning of the Sixteenth Amendment as of the time of the enactment of the Revenue Act of 1936.

There emerges from a careful reading of all of the opinions in the above-cited cases a somewhat authoritative test of nontaxability and of taxability of stock dividends. Distilled from the decisions and the rationale in these cases is the conclusion that Section 115 (f) (1) excludes from income any stock dividend which does not change the shareholder's pre-existing proportionate interest in the corporation, and excludes no other type of stock dividend from income. Before deciding whether a stock dividend effects such a change, it is essential that an examination be made of the capital structure of the corporation before and after the payment of such dividend.

Eisner and Griffiths hold that the requisite change does not occur if a dividend is paid on the common stock in common stock of the same class at a time when there is no other class of stock outstanding. In Sprouse it was settled that the payment of a dividend in non-voting common on both the voting and non-voting common, at a time when no other class of stock was outstanding, does not effect such a change where the only difference between the two classes of stock was that the one class only had voting rights. Strassburger puts into the class of nontaxable stock dividends a dividend on the common stock paid in

preferred stock at a time when the common alone was outstanding where all of it is owned by a single shareholder. Both Koshland and Gowran illustrate two situations in which a stock dividend does produce the change requisite to treating the dividend as income. In each of them the dividend was paid in shares of one class on shares of a wholly different class at a time when shares of both classes were outstanding.

Application of the "proportional interest" doctrine requires a case by case examination of the facts as they affect the real interest in the corporation of the shareholder who receives the dividend.

The court is aware that the principal factors with respect to which the rights of different classes of stockholders vary are their rights to dividends, their rights on the liquidation of the corporation and their voting rights. An examination of the undisputed facts in this case leads the court unerringly to the conclusion that the distribution of the preferred stock dividend herein changed the pre-existing proportionate interest of each plaintiff with respect to rights to dividends and rights on liquidation.

Prior to the stock dividend, Isadore Pizitz owned no preferred stock. Since there were 1,000 shares of this 6 percent preferred stock having a par value of $100 per share then outstanding, the first $6,000 of earnings available each year for dividends were set aside for the preferred stockholders. None of that amount was payable to plaintiff, Isadore Pizitz. As a result of this stock dividend, he acquired 135 shares of preferred stock with a corporation then having 1,500 shares of preferred outstanding. Thus, the first $9,000 of earnings available each year for dividends were set aside for preferred shareholders, and Isadore Pizitz, instead of having no interest in the first $6,000 of dividends, had a 9 percent interest in all dividends up to $9,000 available each year. And thus, in the event of liquidation of the corporation, Isadore Pizitz had no pre-existing interest in the first $100,000 available for distribution, that being reserved for the preferred stockholders. After the dividend, he had a 9 percent interest in the first $150,000 available for distribution.

So, too, was the interest of the plaintiff Hortense Pizitz changed. Before the stock dividend, she owned 35 shares of preferred stock, entitling her to 3½ percent of the first $6,000 paid in dividends. By such dividend she acquired 30 additional shares of preferred and became entitled to 4⅓ percent of the first $9,000 in dividends. Similarly, her interest on liquidation changed from 3½ percent of the first $100,000 to 4⅓ percent of the first $150,000 available for distribution. Since the court is of the opinion that the pre-existing proportionate interests of the shareholders in the Pizitz Realty Company were changed by the stock dividend of December 15, 1953, it follows that this dividend was properly included within plaintiffs' taxable income for the year in question and in the judgment hereinafter to be entered no recovery will be allowed with respect thereto.

In the order on pretrial hearing it was stipulated by the parties that plaintiffs are entitled to an additional dependency credit for the year 1953 in the amount of $1,200. After recomputation of taxes and interest, judgment will be entered in favor of plaintiffs based upon the erroneous disallowance of such credit.

It remains to be said that plaintiffs' reliance upon the provisions of Sections 305 and 317 of the 1954 Internal Revenue Code, 26 U.S.C. §§ 305, 317 is misplaced. The year 1953 was unaffected thereby. It is of academic interest only that the Congress has revisited the Revenue Act of 1921, § 201, 42 Stat. 228, enacted the following year after Eisner was decided, which expressly excluded all stock dividends from taxable income. That was the law until 1936 and the cycle is now complete.

Judgment in conformity with the foregoing opinion will be presented and entered.

904

NOTE. Some of the language of this opinion was lifted directly, without appropriate quotes, and some paraphrased from Rottschaefer, Present Taxable Status of Stock Dividends in Federal Law, 28 Minn.Law Review 106.